UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JENNIFER GARRETT,

        Defendant.

_____/

No. 1:23-CR-111

Hon. Robert J. Jonker
U.S. District Judge

## PLEA AGREEMENT

This constitutes the plea agreement between JENNIFER GARRETT and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1.    <u>Defendant Agrees to Plead Guilty to Information.</u>  Defendant gives up the right to Indictment by a grand jury and agrees to plead guilty to the Information, charging conspiracy to smuggle drugs into the United States, in violation of Title 18, United States Code, Sections 371 and 545.

2.    <u>Defendant Understands the Crime.</u>  In order for Defendant to be guilty of violating Title 18, United States Code, Sections 371 and 545, the following must be true:

- First, that two or more persons conspired, or agreed, to commit the crime of smuggling goods into the United States;

- Second, that the defendant knowingly and voluntarily joined the conspiracy; and

- Third, that a member of the conspiracy committed an overt act in furtherance of the conspiracy.

The elements of smuggling, in violation of Title 18, United States Code, Section 545, are:

- The defendant smuggled merchandise into the United States contrary to law, namely, unapproved, misbranded drugs and controlled substances, or otherwise received, concealed, or facilitated the transport of that merchandise knowing it was smuggled into the United States contrary to law; and

- The defendant acted fraudulently or knowingly.

Defendant is pleading guilty because Defendant is guilty of the conspiracy described above.

3. <u>Defendant Understands the Penalty</u>. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Sections 371 and 545, is the following: 5 years of imprisonment; a 3-year period of supervised release; a fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greater; and a mandatory special assessment of $100.

4. <u>Assessments, Restitution, Other Criminal Monetary Penalties, and Financial Cooperation</u>. Defendant agrees to pay the $100 special assessment on the day of sentencing.

5. <u>Supervised Release Defined</u>. Supervised release is a period of time following imprisonment during which Defendant will be subject to various restrictions and requirements. Defendant understands that if she violates one or more of the conditions of any supervised release imposed, she may be returned to prison for all or part of the term of supervised release, which could result in the

Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

6.  **Factual Basis of Guilt**.  Defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

In late 2018 and into 2019, Defendant was looking for a way to make money. Defendant ultimately connected with Jeremy Walenty via Discord, a social media messaging application, about a "job opportunity." The two subsequently continued discussing the opportunity via Wickr, an encrypted messaging application. Defendant contacted Walenty on Wickr via his handle, "JSherbo." From Walenty, Defendant learned that she could make money by agreeing to receive, repackage, and reship prescription drugs available for purchase on the website www.ExpressPCT.com and sent to the United States from overseas. During her involvement in the conspiracy, Defendant learned that www.ExpressPCT.com was, in fact, owned and operated by another co-conspirator, Brendon Gagne. During her participation in the scheme, Defendant contacted Gagne on Wickr, using his handle "ariajacobs."

Defendant ultimately agreed to participate in the scheme, receiving at least four international packages containing bulk quantities of prescription drugs available for purchase on www.ExpressPCT.com. The packages were all shipped from overseas. Some of the drugs Defendant received were concealed inside cosmetics boxes in order to disguise their true nature. Each time she received a package, Defendant forwarded the bulk quantities of drugs to other co-conspirators, including

Walenty, who broke them down into smaller packages to fulfill customer orders. Later, Defendant received bulk shipments from co-conspirators inside the United States. Defendant used these smaller shipments to fulfill orders that customers placed on www.ExpressPCT.com. In order to reship the packages, on or about October 13, 2020, Defendant obtained approximately 100 Priority Mail boxes and 840 Priority Mail envelopes from the United States Postal Service.

Defendant received instructions on reshipping the drugs from both Walenty and Gagne, who also provided her with prefilled shipping labels. Defendant never saw any prescriptions for the drugs contained in the packages. Defendant knew that receiving and reshipping prescription drugs in this manner was illegal but participated in the scheme anyway.

Defendant was one of numerous individuals who agreed to reship drugs as part of the scheme. Additional shippers were located in Defendant's home state of Florida, Colorado, and the Western District of Michigan. In exchange for their participation in the scheme, some of the re-distributors like Defendant received payment in the form of Bitcoin. Defendant was a knowing and voluntary participant in the conspiracy.

7. <u>Cooperation in Criminal Investigations</u>.  Defendant agrees to fully cooperate with the United States Postal Inspection Service, the Food and Drug Administration, the Michigan State Police, and, the U.S. Attorney's Office, as well as any other law enforcement agency in their investigation of the charges contained in the Information, as well as the investigation of crimes over which they have actual or

apparent jurisdiction. Defendant's cooperation will consist of all steps needed to uncover and prosecute such crimes, including, but not limited to, providing investigators with a full, complete and truthful statement concerning Defendant's knowledge of any and all criminal activity of which she is aware; truthfully answering investigators' questions; meeting with prosecutors before testifying; truthfully testifying before grand juries and in any court proceedings; and providing all relevant tangible evidence in Defendant's possession or under Defendant's control, including, but not limited to, objects, documents, and photographs. Defendant's obligation to cooperate under this paragraph is an affirmative one and includes the obligation to voluntarily come forward with any and all information which Defendant should reasonably know will assist in the investigation of other criminal activity. Defendant will not commit any criminal offense during the course of her cooperation with the United States. Defendant will submit to polygraph examination(s) upon request. Defendant's obligation under this paragraph is a continuing one, and shall continue after sentencing until all investigations and prosecutions in which Defendant's cooperation is deemed relevant by the U.S. Attorney's Office have been completed.

8.  **Acceptance of Responsibility.** The U.S. Attorney's Office agrees not to oppose Defendant's request for a two-level reduction of her offense level for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to Defendant's request if it subsequently learns of conduct by Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level

reduction as provided herein, the Government will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

9. <u>Protection for the Proffered/Cooperative Statements</u>. The U.S. Attorney's Office agrees that information provided by Defendant through Defendant's proffer(s), and any information provided pursuant to Defendant's promise to cooperate as described in this agreement, will not be used by the Government to enhance Defendant's sentence, in accordance with Sentencing Guidelines § 1B1.8, and according to the terms of the written agreement entered into between the parties immediately prior to the proffer(s). It is expressly understood, however, that such information may be used by the Government at sentencing if Defendant takes a position at sentencing that contradicts information provided by Defendant pursuant to this agreement or any proffer agreement.

10. <u>Prison Placement</u>. The U.S. Attorney's Office will not object to a request by Defendant that the Court recommend that Defendant be confined at any particular institution. Both parties acknowledge that the Bureau of Prisons, in its sole discretion, decides prison placement and that, while the Bureau often gives deference to a Court's recommendation, the Bureau is not required to follow the Court's recommendation.

11. <u>Possibility of Sentence Reduction Motions</u>. The U.S. Attorney's Office will decide whether to file a motion for departure or reduction of sentence pursuant to Sentencing Guidelines § 5K1.1 and/or Rule 35(b) of the Federal Rules of Criminal

Procedure. Defendant fully understands that such a motion may be made pursuant to law if, and only if, Defendant fully cooperates with the Government and materially and substantially assists the Government in the investigation or prosecution of others. The determinations of whether Defendant has provided substantial assistance to the United States, or to designated state or local law enforcement authorities, will be made in the sole discretion of the U.S. Attorney's Office. Defendant fully understands that this paragraph is not a promise by the Government to file a motion for departure or to reduce a sentence. Additionally, Defendant understands that, even if such a motion were filed, the Court has complete discretion to grant or deny the motion. Furthermore, if the Court were to grant the motion, the Court, not the Government, would decide how much of a departure or sentence reduction Defendant receives based upon the nature and extent of Defendant's assistance. Defendant acknowledges and agrees that Defendant may not appeal the Court's exercise of its discretion in granting or denying a motion for departure or reduction of sentence, if such a motion is made.

12. **The Sentencing Guidelines.** Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing Defendant. Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. Defendant understands that Defendant and Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations

concerning the calculation of the Guideline range and the sentence to be imposed. Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum penalties described elsewhere in this Agreement. Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

13. Guideline Agreements: Defendant and the U.S. Attorney's Office agree and stipulate that the Guidelines in this matter will be calculated under U.S.S.G. § 2B1.1. However, the parties reserve the right to argue about the amount of loss/gain attributable the offense of conviction at the time of sentencing. Defendant and the U.S. Attorney's Office each further reserve the right to argue that additional specific offense characteristics, adjustments, and departures are appropriate.

    a. Stipulations Not Binding in Court. The Defendant understands that neither the United States Probation Office nor the Court is bound by any stipulation in this agreement, and that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. Both the Defendant and the U.S. Attorney's Office are free to supplement the facts stipulated to in this agreement by supplying relevant information to the United States Probation Office and the Court, and to correct any and all factual misstatements relating to the calculation of the sentence. Defendant understands that if the Court

finds facts or reaches conclusions different from those in any stipulation contained in this agreement, Defendant cannot, for that reason alone, withdraw her guilty plea.

14. **No Other Agreements About Final Sentencing Guidelines Range**. Aside from the agreement contained in paragraph 13, Defendant and the U.S. Attorney's Office have no agreement as to the applicable Sentencing Guidelines factors or the appropriate Guideline range. Both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments and departures.

15. **Waiver of Constitutional Rights**. By pleading guilty, Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of Defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, Defendant would have had the following rights:

    a. The right to the assistance of counsel, including, if Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent Defendant.

    b. The right to be presumed innocent and to have the burden of proof placed on the Government to prove Defendant guilty beyond a reasonable doubt.

    c. The right to confront and cross-examine witnesses against Defendant.

  d.  The right, if Defendant wished, to testify on Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

  e.  The right not to be compelled to testify, and, if Defendant chose not to testify or present evidence, to have that choice not be used against Defendant.

  f.  By pleading guilty, Defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

16. <u>Waiver of Other Rights</u>.

  a.  <u>Waiver</u>. In exchange for the promises made by the government in entering this plea agreement, Defendant waives all rights to appeal or collaterally attack Defendant's conviction, sentence, or any other matter relating to this prosecution, except as listed below.

  b.  <u>Exceptions</u>. Defendant may appeal or seek collateral relief to raise a claim, if otherwise permitted by law in such a proceeding, on the following grounds:

    i.  Defendant's sentence on any count of conviction exceeded the statutory maximum for that count;

    ii.  Defendant's sentence was based on an unconstitutional factor, such as race, religion, national origin, or gender;

    iii.  the guilty plea was involuntary or unknowing;

        iv.      an attorney who represented Defendant during the course of this criminal case provided ineffective assistance of counsel.

If Defendant appeals or seeks collateral relief, Defendant may not present any issue in the proceeding other than those described in this subparagraph.

17.    <u>FOIA Requests.</u>  Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18.    <u>Hyde Waiver.</u>  Defendant acknowledges, by her voluntary admission of guilt, that the position of the U.S. Attorney's Office in this case is not vexatious, frivolous, or in bad faith, and Defendant hereby disclaims and waives any right to make any claim for attorney fees.

19.    <u>The Court is not a Party to this Agreement.</u>  Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, Defendant cannot, for that reason, withdraw her guilty plea, and she will remain bound to fulfill all of her obligations under this agreement. Defendant understands that no one – not the prosecutor, Defendant's attorney, or the

Court – can make a binding prediction or promise regarding the sentence Defendant will receive, except that it will be within the statutory maximum.

20.   **This Agreement is Limited to the Parties**.  This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority.  This agreement applies only to crimes committed by Defendant.  This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

21.   **Consequences of Breach**.  If Defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which Defendant would otherwise be entitled under the terms of this agreement.  In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed.  In such an event, Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant.  Defendant further agrees to waive and forever give up her right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

22.   **This is the Complete Agreement**.  This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete

understanding between the parties. No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

23. <u>Deadline for Acceptance of Agreement</u>. If a copy of this agreement, executed by Defendant and defense counsel, is not returned to the U.S. Attorney's Office by **9/1/2023**, this agreement will be withdrawn automatically and will thereafter have no legal effect or force, unless the U.S. Attorney's Office, in its sole discretion, chooses to accept an executed agreement after that date.

_8/30/23_
Date

MARK A. TOTTEN
United States Attorney

STEPHANIE M. CAROWAN
Assistant United States Attorney

(This space intentionally left blank.)

13

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

08/24/23
Date

JENNIFER GARRETT
Defendant

I am JENNIFER GARRETT's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

8/28/2023
Date

PAVOL FABIAN
Attorney for Defendant